NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

GUSSIE FREDMAN, PETITIONER, v. SAMUEL SAFIER AND ABE FELDMAN, TRADING AS "UNION PAPER CO.," RESPONDENT.

**Death of Employe Caused by an Automobile Collision—Employe was in an Automobile Supplied by Employer to Take Employe to and From His Employment—Held, Accident Occurred During Course of Employment.**

On petition for compensation. On finding of facts, determination and judgment.

For the petitioner, *Morris G. Fredman.*

For the respondents, *Charles E. Broadhurst.*

On June 1st, 1926, at about seven forty-five A. M., decedent, Abraham Fredman, an employe of the Union Paper Company, was killed when an automobile, owned by respondent, and of which he was an occupant, was in collision with another automobile, near the railroad station at Little Silver, Monmouth county, New Jersey. The automobile in question was driven by Harry G. Fredman, a son of decedent, and also an employe of respondent.

At the hearing for compensation, the testimony disclosed that decedent had been an employe of respondent for a period of approximately six years, prior to the date of his death, in the capacity of inside manager, at a salary of $50 per week.

On the day of his death and for several years prior thereto, decedent resided in Long Branch, New Jersey, with his wife, Gussie Fredman, the petitioner herein, and his son, Harry G. Fredman, nineteen years of age, who was also an employe of respondent.

It appears from the testimony that about four years prior to the date of the collision, respondent, whose place of business was in Red Bank, New Jersey, had instructed decedent to be present at its place of business at eight o'clock each morning, had given decedent the keys to open place of business and had required decedent's presence and the presence of other employes at eight o'clock each morning, and in order to insure the presence of decedent and other employes at its place of business at that time, had placed an automobile in decedent's charge, so that he, his son, Harry G. Fredman, and Minnie Kamrass, a bookkeeper, could facilitate traveling back and forth from respondent's place of business, in order to arrive at the designated time.

It appears from the testimony that the automobile used by decedent and the other employes of said respondent was owned by respondent, who also furnished gas, oil, accessories and other necessary adjuncts in connection with the use of same.

The testimony as to instructions and uses of the automobile in question and the purposes for which same was used, was corroborated by Harry G. Fredman and Minnie Kamrass, both employes of respondent.

On the date that decedent met his death, the car was driven by Harry G. Fredman, and contained, in addition to decedent and his son, the said Minnie Kamrass, also an employe, and one other person, who had received a lift on his way to Red Bank.

The testimony also disclosed that at the time of accident and death of decedent, that he was on his way to work.

Decedent left him surviving his widow, who was dependent on him at the time of said accident and death, which arose out of and in the course of employment, also a son, Harry G. Fredman, age nineteen years.

OPINION.

Decedent was an employe of the respondent for approximately six years prior to his death on June 1st, 1926, and

for a period of approximately four years before the date of his death had been going back and forth from his home in Long Branch to the place of business of respondent in Red Bank, New Jersey, in an automobile provided by respondent, the use of which automobile was approved and sanctioned by respondent, whose acts, such as furnishing gasoline, oil, repairs and other accessories, indicate that it knew and intended that said automobile should be used by decedent in going back and forth from his work.

It also appears that the use of this automobile was an advantage to respondent, because it permitted the decedent and two other employes residing in Long Branch to arrive at its place of business at eight o'clock each morning, so that the place of business could be opened at that time, and the affairs of said respondent commenced then.

It is quite apparent from the testimony that the benefits derived by respondent were more than sufficient to offset the cost and expense of maintaining the automobile for the use to which same was put.

In *Depue et al.* v. *George D. Salmon Co.*, 106 *Atl. Rep.* 379, it appears that there was an arrangement between employer and employe, whereby the employe was entitled to use the automobile of employer to take him to his home at night and from his home to business in the morning, and the object was to enable him to reach his place of employment at an earlier hour than he could otherwise. It was held in this case that the employer was liable for the acts of the employe during the time that the employe was going to and from his place of business.

In *Cicalese* v. *Lehigh Valley Railroad Co.*, 75 *N. J. L.* 897; 69 *Atl. Rep.* 166, the presiding judge has therein held:

"The relation of master and servant continues during the carriage of the servant to and from his work, when done by the master, or with his consent, where from the character of the service such transportation is beneficial both to the master and servant." *Soden* v. *Public Service Transportation Co.*, 134 *Id.* 560.

In *Fisher* v. *Tidewater Building Co.*, 114 *Atl. Rep.* 150, the plaintiff, an employe of the defendant company, was killed while on his way home after quitting work and while boarding a train provided by his employer. Judge Black, who wrote the opinion, held that:

"Where a workman is employed to work at a certain place, and that as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of service continues during the time of transportation, and if an injury occurs during the course of transportation, it is held to have arisen out of and in the course of employment."

This rule has been the support of English and American cases.

Following the line of reasoning in the aforementioned cases, I am of the opinion that the petitioner shall be entitled to receive compensation in accordance with the prayer of the petition.

\*　　\*　　\*　　\*　　\*　　\*　　\*

W. E. STUBBS,
*Deputy Commissioner.*